**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**DECKERS OUTDOOR CORPORATION, A DELAWARE CORPORATION,**

**Plaintiff,**

**-against-**

**NEXT STEP GROUP, INC., A NEW YORK CORPORATION; AND DOES 1-10, INCLUSIVE,**

**Defendants.**

**23-cv-02545 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Defendant Next Step Group, Inc. ("Next Step") moves to dismiss this action under Fed. R. Civ. P. R. 12(c) brought by Plaintiff Deckers Outdoor Corporation ("Deckers") for trade dress infringement, design patent infringement, and unfair competition under federal and California state law, arising from Next Step's alleged sale of products bearing similar reproductions of Plaintiff's trade dress designs and design patents. For the reasons set forth below, Defendant's motion to dismiss is **DENIED** in part and **GRANTED** in part.

## BACKGROUND

The Court assumes the Parties' familiarity with the facts, which are set forth more fully in the Complaint. Deckers is a corporation incorporated under Delaware law with its principal place of business in Goleta, California. Deckers designs, markets, distributes, and sells footwear for various well-known brands, including UGG®. Deckers purports to have protectable trade dress over the ornamental design of its UGG® Classic Ultra Mini product, introduced in 2020, and its UGG® Neumal Boot product, introduced in 2011. Deckers has spent significant time, effort, and millions of dollars annually on advertising UGG® products, including footwear embodying the Neumal and Classic Ultra Mini Trade Dress. Deckers identifies their Neumal and Classic Mini

Trade Dress as two of the UGG® brand's most well-recognized and commercially successful styles. These two styles have been used in promotional materials and garnered unsolicited media attention from celebrities, influencers, magazines, and trade publications. Deckers claims to have sold millions of dollars' worth of UGG® Neumal Boots, the embodiment of the Neumal Trade Dress, and of UGG® Classic Ultra Mini boots, the embodiment of the Classic Ultra Mini Trade Dress.

Next Step is a corporation incorporated under New York law with its principal place of business in New York, NY. Next Step is Deckers' competitor in the footwear industry and is the owner of Cushionaire®, the house mark for a line of products allegedly resembling the Neumal and Classic Ultra Mini Trade Dress. Deckers alleges that Next Step has designed, manufactured, offered for sale, and sold, through third-party retail stores and websites and Next Step's website, infringing products to customers nationwide.

Deckers owns U.S. Patent Nos. D774,736, issued on Dec. 17, 2016; D790,186, issued on June 27, 2017; and D927,160 and D927,161, both issued on August 10, 2021, all of which relate to various ornamental components of UGG® footwear. Deckers alleges to have marked substantially all their products incorporating the relevant patents either with their respective patent numbers or with virtual patent marking on product labels, putting Defendant on notice of the patents. Specifically, Deckers alleges infringement of UGG® Neumal Trade Dress through sale of Cushionaire's "Harper", infringement of UGG® Classic Ultra Mini Trade Dress and Patent No. '161 through Cushionaire's "Hip", and infringement of U.S. Patent Nos. '736, '160, and '186 through Cushionaire's "Hilo," "Kayla," and "Happy," respectively. Deckers also alleges Next Step may have sold additional products that infringe upon Deckers' design patents and trade dresses. Deckers has not granted Next Step a license to practice nor granted permission

to use their trademarks, trade dress, or patents. Following notice of infringement, Deckers alleges that Next Step has continued to sell infringing products and alleges that Next Step is acting in bad faith, exploiting Deckers' goodwill and relevant products' reputation.

**PROCEDURAL HISTORY**

On January 25, 2023, Plaintiff filed the operative complaint alleging trade dress infringement, unfair competition, and patent infringement based upon the alleged trade dress. ECF No. 1. On July 5, 2023, Next Step filed its Amended Answer and Counterclaims which denied these allegations. ECF No. 30. On February 28, 2024, Defendant filed a motion to dismiss. ECF No. 56. On March 13, 2024, Plaintiff filed its response in opposition to the Defendant's motion to dismiss. ECF No. 58. On March 20, 2024, Defendant filed memorandum in reply to the Plaintiff's opposition. ECF No. 59. The Court considers this motion to dismiss fully briefed.

**STANDARD OF REVIEW**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted," a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (U.S. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Indeed, Federal Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the truth of the allegations.]" *Twombly*, 550 U.S. at 556.

The Court reviews motions for judgment on the pleadings brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure under the same standard as Rule 12(b)(6) motions to dismiss. *Bank of N.Y. v. First Millennium, Inc*., 607 F.3d 905, 922 (2d Cir.2010). The Court accepts as true all of the nonmoving party's well-pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc*., 637 F.3d 112, 115 (2d Cir. 2011). Judgment on the pleadings may be granted "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc*., 842 F.2d 639, 642 (2d Cir.1988).

On a Rule 12(c) motion, the court may consider "the complaint, the answer, any written documents attached to them, . . . any matter of which the court can take judicial notice for the factual background of the case[,] . . . any written instrument attached . . . as an exhibit, materials incorporated . . . by reference, and documents that, although not incorporated by reference, are integral" to the pleadings. *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir.2011) (internal quotation marks omitted). While all reasonable inferences should be drawn in favor of the plaintiff, courts are not required to "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual allegations to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 547. "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Next Step seeks dismissal of Deckers' claims for trade dress infringement of the Classic Ultra Mini and Neumel Trade Dress; 2) design patent infringement; 3) patent marking and past damages; and 4) willful infringement. Additionally, Plaintiff has requested leave to amend the complaint in its reply if this Court gives credence to any of Next Step's arguments in the instant motion to dismiss. The Court will address each claim separately.

**I. Trade Dress Infringement Claim**

This Court denies Next Step's motion to dismiss the trade dress infringement claim. To succeed on a trade dress infringement claim under section 43(a) of the Lanham Act, a plaintiff must prove "that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's goods and the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am*., 76 Fed.Appx. 389, 391 (2d Cir.2003) (citation omitted). "The concept of trade dress encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the consumer." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp*., 111 F.3d 993, 999 (2d Cir. 1997). "A plaintiff must also offer "a precise expression of the character and scope of the claimed trade dress," and articulate the elements of . . . design with specificity to be afforded trade dress protection. *Landscape Forms, Inc. v. Columbia Cascade Co*., 113 F.3d 373, 381 (2d Cir. 1997). Indeed, these are the elements that a plaintiff must prove in order to prevail on a trade dress infringement claim at trial. At the motion to dismiss stage, however, a

plaintiff need only articulate "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**1. Non-Functionality**

Deckers has sufficiently pleaded enough facts to make a plausible claim of non-functionality at the motion to dismiss stage. Under the Lanham Act, "[i]n a civil action for trade dress infringement . . . the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. 1125(a)(3). Because functionality of trade dress is a question of fact, "it is often premature to conclude that a plaintiff has failed to establish functionality at the motion to dismiss stage." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265 (S.D.N.Y. 2018); *see also Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-3931 RS, 2009 WL 55178, at *3 (N.D. Cal. Jan. 7, 2009) (The "inquiry into whether a product is functional . . . is fact intensive with multiple factors for the Court to consider," and "facts going to that functionality analysis cannot be resolved at the motion to dismiss stage but must await summary judgment or trial.")

Here, Next Step alleges that Deckers' trade dress claims are not plausible because they include bare bones recitations of the elements. This Court disagrees. Deckers alleges that the Classic Ultra Mini Trade Dress is unique in the footwear industry and inherently distinctive, and comprised of the following non-functional elements: a) an ankle-high boot; b) classic suede boot styling; c) an exaggerated, raised and exposed circular stitch pattern; d) exposed tufting; e) a raised and rounded vamp; f) a suede heel overlay on the boots exterior; g) fabric binding along the top of the boot and along the sole; h) a thick, flat sole; and i) a top line that is higher in the front and lower in the back. Additionally, Deckers alleges that the Neumel Trade Dress is unique, inherently distinctive, and comprised of the following non-functional elements: a) an

ankle-high boot with open lacing; b) an upper with a suede or brushed suede-like appearance; c) a flat outsole; d) an exposed mudguard on the portion of the upper immediately above the outsole around the perimeter of the boot; e) fabric binding immediately above the exposed mudguard around the perimeter of the boot; f) two quarters sewn on top of a vamp, each quarter having an eyelet section with three lacing eyelets and forming the opening for the lacing; g) fabric binding around the topline of the boot shaft (or collar) extending through the top of each eyelet section and the front edges of the two quarters down to the outsole; h) a suede heel overlay on the boots exterior; and i) exposed wool or shearling lining on the tongue and around the topline of the boot shaft (or collar). These descriptions alone cannot be described as "bare bones" recitations of the elements when they are listed to distinguish their products from others in the industry.

Furthermore, functionality is a question of fact that makes dismissal at the pleading stage inappropriate. *See Caraway Home, Inc. v. Pattern Brands, Inc.*, 2021 WL 1226156 (S.D.N.Y. April 1, 2021). Deckers claims that it will produce evidence in support of non-functionality, including an expert report which will opine at length about the numerous design alternatives to the Classic Ultra Mini Trade Dress and Neumel Trade Dress; Deckers' advertising for the UGG® Classic Ultra Mini and the UGG® Neumel that focuses on both the products attractive visual appearance and quality in manufacturing construction; and trade dress designs which do not result from an inexpensive method of manufacturing.

**2. Secondary Meaning**

Deckers has sufficiently pleaded secondary meaning for the Classic Ultra Mini and Neumel Trade Dresses at the motion to dismiss stage. Indeed, determining whether a descriptive mark has acquired secondary meaning is a fact-intensive inquiry. *See Gross v. Bare Escentuals Beauty, Inc.*, 632 F.Supp.2d 283, 291 (S.D.N.Y.2008) ("determining secondary meaning is a

fact-intensive inquiry"); *see also Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F.Supp.2d 288, 316 (S.D.N.Y.2012) ("Whether a mark has acquired secondary meaning is a factual determination, proof of which entails vigorous evidentiary requirements." (internal quotation marks omitted)). Of course, fact-intensive inquiries are "ill-suited for resolution at the motion to dismiss stage." *In re Bear Stearns Mortg. Pass–Through Certificates Litig.*, 851 F.Supp.2d 746, 763 (S.D.N.Y.2012). Therefore, the question of whether a descriptive mark has acquired the secondary meaning necessary to be distinctive generally cannot be resolved on a motion to dismiss. *See Kaplan, Inc. v. Yun*, 16 F.Supp.3d 341, 348–49 (holding that issue of whether mark had obtained secondary meaning was a question of fact that could not be determined on a motion to dismiss); *CourtAlert.com, Inc. v. e-Law, LLC,* No. 12 Civ. 2473(DAB), 2013 WL 4754819, at *6 (S.D.N.Y. Aug. 26, 2013) (determining whether a mark had secondary meaning presented a question of fact that could not be decided on a motion to dismiss); *In re Conn. Mobilecom, Inc.*, No. 02 Civ. 02519(WHP), 2003 WL 23021959, at *10 (S.D.N.Y. Dec. 23, 2003) (finding that the issue of whether a trade name has acquired secondary meaning is a question of fact and therefore would not be appropriate to decide on a motion to dismiss).

Here, Deckers sufficiently alleges that the Classic Ultra Mini and Neumel Trade Dresses have achieved distinctiveness through secondary meaning. The Second Circuit has articulated six non-exclusive factors for courts to consider when weighing secondary meaning: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc*., 696 F.3d 206, 226 (2d Cir. 2012). In the complaint, Deckers pleaded that the respective trade

dress are two of the most well-recognized and commercially successful styles of UGG® brand footwear products, having been featured in many of Deckers' advertising, promotional materials, and trade publications. Additionally, Deckers alleges that the respective trade dress have received a large volume of unsolicited media attention through various celebrities over the years being seen wearing the UGG® Classic Ultra Mini and/or the UGG® Neumel in nationwide and international magazines. Furthermore, Deckers claims that it spends millions of dollars annually on advertising of UGG® products, including footwear embodying the respective trade dress and has sold millions of dollars' worth of the UGG® Classic Ultra Mini and UGG® Neumel. Together, these allegations in support of their secondary meaning argument are sufficiently plausible at the motion to dismiss stage.

Next Step further argues that Deckers' secondary meaning in the Classic Ultra Mini is implausible because the Lanham Act has a 5-year requirement to achieve secondary meaning. Specifically, Next Step alleges that the UGG® Classic Ultra Mini was introduced in June 2020, only two to three months before the accused Cushionaire® Hip. Indeed, courts have laid out non-exclusive factors to aid in determining secondary meaning. One relevant factor is the length and exclusivity of the mark. There is no requirement in the Lanham Act for a trademark to have been continually and exclusively used for 5 years to achieve secondary meaning, nor has this requirement been adopted by the Second Circuit. In determining whether a mark has acquired secondary meaning, the existence of secondary meaning and likelihood of confusion are not to be determined by the application of a rigid formula. "[N]o precise guidelines are applicable and no single factor is determinative." *American Footwear Corp. v. General Footwear Co*., 609 F.2d 655, 663 (2d Cir.1979), cert. denied, 445 U.S. 951 (1980). Next Step also claims that secondary meaning in the UGG® Neumel is implausible because the complaint contains "only bare bones,

non-substantive, boilerplate allegations devoid of facts." ECF No. 56 at 17. As discussed herein, given that secondary meaning is a fact-intensive inquiry, we do not need to decide this at the motion to dismiss stage.

**3. Likelihood of Confusion**

Deckers has sufficiently met its burden of alleging a likelihood of confusion at the motion to dismiss stage. To prove likelihood of confusion, courts apply a two-prong test: the first looks to whether the senior user's mark is entitled to protection, the second, to whether the junior user's use of its mark is likely to cause consumers confusion as to the origin or sponsorship of the goods. *See Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp*., 991 F.2d 1072, 1075 (2d Cir. 1993)). Indeed, because "likelihood of confusion is a factual question, centering on the probable of reactions of prospective purchasers of the parties' goods," *Pirone v. MacMillan, Inc., 894 F.2d 579*, 584 (2d Cir. 1990), the question ordinarily is ill-suited for resolution on a motion to dismiss. *See, e.g., Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co*., 220 F.R.D. 39, 40 (S.D.N.Y. 2004). Courts may appropriately dismiss claims on a motion to dismiss when plaintiffs cannot satisfy either of the two prongs. "Where a mark is ineligible for protection, there is no need to examine likelihood of confusion. Such inquiry would, of course, be redundant, since a determination that a mark is ineligible for protection establishes that consumers do not associate that mark with a particular source." *Thompson Med. Co. v. Pfizer Inc*., 753 F.2d 208, 216 (2d Cir. 1985).

Here, a reasonable fact finder could find a likelihood of confusion between the Accused Products Hip and Harper and the UGG® Classic Ultra Mini and the UGG® Neumel. Deckers alleges that the Accused Products manufactured, imported, distributed, advertised, offered for

sale, and/or sold by Next Step are confusingly similar reproductions of the Neumel Trade Dress, which causes a likelihood of confusion as to the source, sponsorship or approval by Deckers. Next Step, however, argues that the Cushionaire® labeling obviates likelihood of confusion because consumers looking for an UGG® product can easily ascertain that Next Step is not selling an UGG® product because the Next Step product is labeled with a different mark – Cushionaire®. However, as with challenges to trademark registration before the PTO, the use of a house mark in conjunction with a product mark does not prevent a finding of likelihood of confusion. *See In re Microsoft Corp.*, 68 U.S.P.Q.2D 1195, 1198 (T.T.A.B. 2003); *see also New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 335 (S.D.N.Y. 2010). Instead, the likelihood of confusion is examined considering the following eight, non-exclusive factors: (1) strength of the [trade dress]; (2) similarity of the [trade dresses]; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

**II. Design Patent Infringement Claim**

Deckers has sufficiently alleged design patent infringement, including the '160 Patent and '161 Patent. The Federal Circuit has determined that the appropriate legal standard for assessing claims of design patent infringement is the "ordinary observer test." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed.Cir.2008). This test asks whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design. *See id*. at 677–78. Infringement will not be found unless the

accused article embodies the patented design or any colorable imitation thereof. *Id*. Thus, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and the accused designs with the prior art. *Famosa, Corp. v. Gaiam, Inc*., No. 11 CIV. 5703 (KBF), 2012 WL 573999, at *2–3 (S.D.N.Y. Feb. 22, 2012). The ultimate determination of design patent infringement is a question of fact that plaintiffs must prove by a preponderance of the evidence. *L.A. Gear v. Thom McAn Shoe Co*., 988 F.2d 1117, 1124 (Fed.Cir.1993).

Here, Deckers alleges that Deckers is the owner by assignment of all rights, title and interest in and to the '160 Patent and '161 Patent both issued in August 2021. Deckers argues that they marked substantially all footwear products embodying the design of the '160 Patent with "Patent # D927,160" and '161 Patent with "Patent # D927,161", and/or via virtual patent marking on a product label in compliance with 35 U.S.C. § 287. Despite notice of the '160 Patent and '161 Patent, Deckers alleges that Next Step produced, imported into the U.S., distributed, advertised, marketed, offered for sale, and/or sold within the United States the Accused Products, which bear designs substantially similar to the ornamental design of the '160 Patent and '161 Patent, in violation of 35 U.S.C. § 271. Next Step argues that the Cushionaire® Kayla cannot infringe the '160 Patent because the patent requires vertical stitching, which the Kayla is missing, and lacks a zipper. In addition, Next Step claims that no ordinary observer would find that the Cushionaire® Hip was the design of the '161 Patent. Only "[w]here the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the [plaintiff] fails to meet its burden of proving infringement as a matter of law." *Walker v. Kosann*, 2024 WL 922642, at *3 (S.D.N.Y. Feb. 16, 2024). Here, the two designs are not sufficiently distinct or

plainly dissimilar to warrant dismissal, “particularly in light of the Federal Court’s holding that determining infringement of a design patent is a question of fact, and thus not appropriately resolved in a motion to dismiss.” *E. Rémy Martin & Co. v. Sire Spirits LLC*, 2022 U.S. Dist. LEXIS 4606, *24-25 (S.D.N.Y. Jan. 10, 2022). In light of the questions of fact presented, these claims cannot be dismissed at this stage in the litigation.

### III. Patent Marking and Past Damages Claim

This Court finds that Deckers has not sufficiently pleaded their patent marking and past damages claim to survive at the motion to dismiss stage. The Patent Act provides that patentees and persons making, selling, or importing patented articles may give notice that their articles are patented by marking the articles or its packaging with either the patent number or an online address referencing the patent number. 35 U.S.C. § 287(a). If a patentee fails to comply with these marking requirements, the patentee may not recover damages incurred before the date that the defendant received “actual notice” of the infringement. *Arctic Cat Inc. v. Bombardier Rec. Prods Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). “Filing of an action for infringement shall constitute such notice.” 35 U.S.C. § 287(a). The Patent Act provides three conditions under which a plaintiff may recover pre-litigation damages for patent infringement: (1) if no articles have been manufactured, in which case marking and notice requirements do not apply; (2) if any manufactured articles have been adequately marked; or (3) if the defendant otherwise received actual notice of its infringement before the action was filed. *See id.*; *Arctic Cat Inc.*, 876 F.3d at 1366. Indeed, “[t]he patentee bears the burden of pleading and proving he complied with § 287(a)’s marking requirement.” *Arctic Cat Inc.*, 876 F.3d at 1366. “Whether a patentee's articles have been marked ‘is a matter peculiarly within his own knowledge.’” *Id.* (quoting *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)). When a complaint does not adequately allege compliance

with the marking statute, a claim for pre-litigation damages may be dismissed on a Rule 12(b)(6) motion. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327 (Fed. Cir. 2001).

Next Step claims that Deckers does not sufficiently allege marking under 35 U.S.C. § 287(a). This Court agrees. The operative complaint does not adequately allege compliance with the marking requirements of 35 U.S.C. § 287(a) nor does it allege any other facts to suggest that Next Step had actual notice of the purported infringement before this action was filed. Notably, the complaint is void of discussion concerning whether the patent articles were marked when they entered into commerce, how each patent article was marked, and when Deckers marked the products. Instead, the complaint only mentions three times that Deckers has marked substantially all footwear products embodying the design of its patents "in compliance with 35 U.S.C. § 287", putting Defendants on notice. *See* ECF No. 1. ¶¶78, 86, and 94. Without more information that Deckers has marked the products under the purpose of the law, Decker's assertion of compliance with § 287(a) is only conclusory, and therefore insufficient to state a claim for pre-litigation damages. Because Deckers has not met that burden, its patent marking and past damages claim must be dismissed to the extent it requests damages for infringement that occurred before this action was filed. *See Blackbird Tech LLC v. Argento SC By Sicura, Inc.*, No. 21CV11018 (DLC), 2022 WL 3701084, at *2 (S.D.N.Y. Aug. 26, 2022).

**IV. Willfulness Claim**

This Court finds that the Deckers have met their burden of showing that their willfulness claim is plausible. On a claim of willful infringement of a patent, knowledge must be shown by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. 35 U.S.C.A. § 284; *see also Olaf Sööt Design, LLC v. Daktronics Hoist, Inc.*, 325 F. Supp. 3d 456 (S.D.N.Y. 2018). A claim for willful

patent infringement requires a violation that is willful, wanton, malicious, bad-faith, deliberate, or consciously wrongful. *Carnegie Inst. of Washington v. Pure Grown Diamonds, Inc*., 459 F. Supp. 3d 502, 508 (S.D.N.Y. 2020). Here, Deckers alleges that Next Step engaged in deceptive, unfair, and fraudulent business practices that were willfully undertaken with full knowledge of the Neumel Trade Dress and Classic Ultra Mini Trade Dress with the intent to misappropriate Deckers' goodwill and reputation established in the UGG® Neumel boot and UGG® Classic Ultra Mini. Notably, Deckers alleges that Next Step continues to sell the infringing Accused Products after receiving notice of Plaintiff's claims through this instant litigation. Next Step's continued sale of the Accused Products is allegedly with knowledge of Deckers' rights in both the design patents and trade dresses at issue in this action, and therefore Next Step's alleged infringement would be willful. Accepting these allegations as true and in the Plaintiff's favor, Deckers has sufficiently pleaded willful infringement against Next Step.

**V. Leave to Amend**

This Court finds that leave to amend is appropriate here. Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330 (1971) (citing *Foman v. Davis*, 371 U.S. 178, 182, (1962)). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir.1993). *See State Teachers Ret. Bd. v. Fluor Corp*., 654 F.2d 843, 856 (2d Cir.1981) ("Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend.").

Here, Deckers should have the opportunity to amend its complaint to correct any deficiencies after Next Step moved to dismiss. The instant motion seeks to dismiss Deckers' claims for pre-litigation damages because the complaint contained no allegations that Deckers had complied with § 287's marking requirements. Rather than alleging sufficient facts to plausibly suggest compliance, Deckers only included a conclusory assertion of compliance. The fact that Deckers did not seek to amend after receiving the pre-motion letter does not mean that they should be prevented from amending after receiving the full motion to dismiss. While it's also true that Deckers did not seek to amend before filing the opposition, leave should be freely given. Moreover, Next Step does not cite any cases for the proposition that leave should be denied, especially since Next Step can point to no undue prejudice that would result. Accordingly, leave to amend is granted.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **DENIED** in part and **GRANTED** in part.

**SO ORDERED.**

**Dated: July 18, 2024**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**